# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 05-cr-20507-BLOOM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

FERNANDO SANCHEZ, JR.,

     Defendant.

_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Fernando Sanchez, Jr.'s ("Defendant") Motion for Compassionate Release, ECF No. [136] ("Motion"), filed on February 11, 2021. The Government filed its Response, ECF No. [138], to which Defendant filed no reply.[1] The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case and the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

## I.     BACKGROUND

On August 11, 2005, Defendant pleaded guilty to two counts of a nine-count indictment, for conspiracy to distribute methylenedioxymethamphetamine ("MDMA") (Count 1), and conspiracy to distribute 50 grams or more of methamphetamine (Count 3). ECF No. [93]. On March 24, 2006, the Court sentenced Defendant to a term of 240 months imprisonment followed by a term of six years of supervised release as to Count 1 and ten years of supervised release as to Count 3, to run concurrently. ECF Nos. [88], [94]. Defendant is 70 years old and currently

---

[1] This case was reassigned to the undersigned on June 9, 2021. *See* ECF No. [139].

incarcerated at FCI Beckley, in Beaver, West Virginia, with a projected release date of August 3, 2022.[2] Defendant's most recent request for compassionate release to the Bureau of Prisons ("BOP") was denied on January 22, 2021. *See* ECF No. [138-2]. Defendant now asks the Court to release him because of his multiple health conditions and advanced age, presumably placing him at higher risk of serious illness or death from COVID-19. *See* ECF Nos. [136-1] at 10; [142]. The Government opposes the Motion. ECF No. [138].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with close to 33,395,620 confirmed cases and over 600,000 reported deaths as of June 22, 2021.[3] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, former Attorney General William Barr urged the BOP to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The former Attorney General made the express

---

[2] At the time of filing the Motion, Defendant was housed at Moshannon Valley Correctional Facility.

[3] *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last accessed June 24, 2021).

finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.    LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'"

*United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310,

1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The existing policy statement provides that,

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

>> (1)(A) extraordinary and compelling reasons warrant the reduction; or

>> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) **Medical Condition of the Defendant.**—

        (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is—

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) **Family Circumstances.**—

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).

Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the Court of Appeals for the Eleventh Circuit recently decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *See United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant

compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

## III.    DISCUSSION

In his Motion, Defendant requests compassionate release, arguing that his health conditions, including high blood pressure, liver malfunctions, limited kidney function, bone chronic deterioration, stomach pain, and his medications and advanced age constitute extraordinary and compelling circumstances. The Government opposes the request, arguing that Defendant fails to present extraordinary and compelling reasons to warrant compassionate release, the § 3553(a) factors do not support release, he remains a danger to the community, and he is subject to an immigration detainer. Upon consideration, the Court concludes that Defendant does not present circumstances warranting compassionate release.

The Court recognizes that Defendant has satisfied the administrative exhaustion inquiry of the compassionate release analysis, and the Government does not dispute that the exhaustion requirement has been satisfied. However, as explained below, Defendant fails to demonstrate that extraordinary and compelling circumstances exist in this case.

Recently updated CDC guidance indicates that the following health conditions can make adults of any age more likely to get severely ill due to COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma (moderate to severe); dementia or other neurological conditions; diabetes (type 1 or type 2); Down syndrome; heart conditions, such as heart failure,

coronary artery disease, cardiomyopathies, or hypertension; HIV infection, immunocompromised state (weakened immune system); liver disease; overweight and obesity; sickle cell disease or thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; and substance use disorders.[4] In addition, older adults are more likely to get sick from COVID-19, and the risk increases for people in their 50s, 60s, 70s, and 80s, with people 85 and older being most likely to get very sick.[5] According to Defendant's medical records, his current medical conditions include hypertension, hyperlipidemia, renal insufficiency, prediabetes, cardiac risk factors, and back pain. *See* ECF No. [142-1].[6]

However, in keeping with § 1B1.13,[7] in order for Defendant's medical conditions to provide justification for compassionate release, the Court must find that Defendant is either suffering from a terminal illness, or that his serious physical or medical condition, or serious functional or cognitive impairment, substantially diminishes his ability to provide self-care and from which he is not expected to recover. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). Following review of Defendant's Motion and his medical records, the Court finds that the record does not support either finding under the Sentencing Guidelines. Defendant's medical records do not indicate that his conditions are terminal. Further, Defendant's medical records do not reflect that his treatments while incarcerated are inadequate to care for his medical needs. Indeed,

---

[4] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021).

[5] *Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (las updated June 9, 2021).

[6] The records also indicate that Defendant was treated for hepatitis C in 2017, but has a negative viral load as recently as December, 2020.

[7] Recent Eleventh Circuit precedent in *Bryant* makes clear that this Court is strictly confined to consideration of only the circumstances described in the Sentencing Guidelines in determining whether extraordinary and compelling circumstances exist. 996 F.3d at 1248.

Defendant's medical records reflect that he receives ongoing treatment and care, and Defendant does not contend that such treatment is inadequate. *See* ECF No. [142-1]. Defendant's medical records otherwise do not support the conclusion that he is unable to perform activities of daily living or provide self-care.

In addition, Defendant's age does not constitute an extraordinary and compelling circumstance under § 1B1.13, either alone, or in combination with his medical conditions. In pertinent part, § 1B1.13 requires that Defendant be (i) at least 65 years old; (ii) experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) have served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. While Defendant is over 65 and has served over 75% of his sentence, he has not demonstrated that he is experiencing a serious deterioration in physical or mental health because of the aging process. The Defendant's medical records indicate that his mental health is normal and his medical conditions are being treated. *See* ECF No. [142-1] at 1-8. As such, Defendant's age is not enough to justify compassionate release.

Moreover, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")). In this case, the medical records reflect that Defendant is receiving adequate treatment for his medical conditions, and there is no indication that his ability to provide self-care in the prison setting is significantly diminished, either as a result of his medical conditions or his age.

Finally, the record indicates that even if Defendant were able to demonstrate the existence of extraordinary and compelling circumstances in this case, he is nevertheless subject to an immigration detainer. *See* ECF No. [138-1]. The offenses for which Defendant was convicted constitute aggravated felonies under applicable immigration laws. *See* 8 U.S.C. § 1101(a)(43)(B). Thus, as the Government notes, even if the Court were to grant the instant Motion, Defendant would be transported into ICE custody during the pendency of removal proceedings. *See United States v. Camacho-Duque*, No. 18-80238-CR, 2020 WL 5951340, at *7 (S.D. Fla. Oct. 5, 2020) ("[R]elease from BOP custody, in Defendant's case, does not mean release from government custody. Because Defendant is subject to an immigration 'hold' or detainer, upon execution of this Order, the BOP will surrender Defendant to ICE. From that point forward, Defendant, having been convicted of an 'aggravated felony' within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B), will be subject to mandatory, indefinite detention—that is, detention until she either prevails on her claim for relief or is deported from the United States.").

Additionally, and equally important, releasing Defendant into ICE custody would likely be harmful to Defendant's interests in securing proper medical care for his medical issues. "Were the Court to grant Defendant compassionate release, he may end up leaving . . . only to enter an immigration facility that is less equipped to address his medical needs, and where he is no less exposed to Covid-19." *United States v. Perez Solorio*, No. 3:11-CR-138-J-32JRK, 2020 WL 6292558, at *2 (M.D. Fla. Oct. 27, 2020). Considering the course of treatment Defendant has received to date for his medical issues, the Court would be reluctant to grant release into circumstances that would likely place Defendant at greater medical risk. *See United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020); *see also United States v. Joaseus*, No. 9:16-CR-80011, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020)

(noting that, upon completion of the term of imprisonment, the defendant will be surrendered to ICE custody to await removal proceedings and will likely be held at an immigration detention facility, which, "like prisons, have had confirmed cases of COVID-19 and are implementing measures to respond to the spread of the disease in their populations," and concluding that a sentence reduction was unwarranted because the defendant presented no indication that was a lesser likelihood of exposure to COVID-19 at an immigration detention facility than at a BOP facility); *see also United States v. Chavez*, No. 1:95-CR-00361, 2020 WL 2322917, at *2 (S.D. Fla. May 11, 2020) (same).

Thus, Defendant has not met his burden to demonstrate that extraordinary and compelling reasons exist to support his request for compassionate release, and his Motion must be denied.[8]

## IV.    CONCLUSION

Accordingly, Defendant's Motion, **ECF No. [136]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 24, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[8] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances under the compassionate release analysis, the Court need not address the remaining considerations under § 3553(a) or § 3142(g).